# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

**FILED**
JUN 0 6 2017
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
       )   Case No. 7:17-mj-1167-RJ
the Yahoo! and Yahoo! email account )
glynispaytonr@yahoo.com )
       )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A to agent's affidavit

located in the \_\_\_\_Northern\_\_\_\_ District of \_\_\_\_California\_\_\_\_, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B to agent's affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1111/10 U.S.C. 918 | Murder |
| 18 U.S.C. 113/10 U.S.C. 928 | Assault |

The application is based on these facts:
See attached agent's affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of \_\_\_\_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Brent Schroeder, NCIS
*Printed name and title*

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the applicant appeared before me via reliable electronic means, was placed under oath and attested to the contents of this Application for Search Warrant.

Date/Time: June 6, 2017 8:37 am
City & State: Wilmington, North Carolina      Robert B. Jones Jr., United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Brent Schroeder, being duly sworn state:

1. I am a Special Agent with the United States Naval Criminal Investigative Service (NCIS). I have been employed in this capacity since March 2008, and am currently assigned to the General Crimes Unit, Okinawa, Japan. As part of my daily duties as an NCIS agent, I investigate Federal crimes, including crimes of violence, death, aggravated assault, thefts/larcenies, fraud, child sexual abuse, child physical abuse, criminal violations relating to child exploitation and child pornography, and any other felony crimes relating to the United States Department of the Navy. I have attended and successfully completed the Basic Criminal Investigator's Training Course and the Special Agent Basic Training Course at the Federal Law Enforcement Training Center in Glynco, GA. I have a Bachelor's Degree in Economics from Denison University in Granville, OH. I additionally possess a Master's Degree in Forensic Science (MFS) from National University, San Diego, CA. Prior to employment with NCIS, I was a United States Border Patrol (USBP) agent in Imperial Beach, CA from November 2002 until I was hired by NCIS. I have received advanced training at the Federal Law Enforcement Training Center (FLETC) regarding the investigation of homicide, child sex abuse, physical abuse, aggravated assault, child pornography, and crime scene investigation. Additionally, I have attended training at the San Diego Regional Computer Forensic Laboratory (RCFL) regarding the seizure and review of electronic media.

2. I offer this affidavit in support of an application by the United States of America for the issuance of a warrant to search the Yahoo! e-mail accounts bearing the name Glynis Irvin and/or Glynis Payton, or **glynispaytonr@yahoo.com**, detailed more fully in the search warrant and for the items detailed in Attachments A and B.

3. Based upon information contained within this affidavit, I submit that probable cause exists to believe that the subject account, **glynispaytonr@yahoo.com** described in the search warrant and Attachments A and B contains evidence of violations of federal criminal law, including: Title 18, United States Code (USC), Section 113 (Assault), and Section 1111 (Murder). Violations of Title 10 USC,

1

Section 918 (Murder) and 10 USC 928 (Assault) additionally apply. See also paragraph 5, 6, and 7.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a warrant to search, I have not included every detail or every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. The information contained in this affidavit is based upon information provided by my review of various documents and records, and, where specified, my personal observation and knowledge.

5. It should be noted that the Subject of this investigation, Lance Corporal (LCpl) Timothy IRVIN, United States Marine Corps (USMC), was an active-duty United States Marine during all times relevant to this investigation. As LCpl IRVIN was stationed in Okinawa, Japan, any potential prosecution will occur via military judicial channels for a suspected violation of Article 118 (Murder) of the Uniform Code of Military Justice (UCMJ). USMC legal personnel have stated that any military judicial proceedings for LCpl IRVIN will occur at Camp Lejeune, NC.

6. Glynis IRVIN (G.IRVIN), the decedent whose e-mails are being sought, was a USMC dependent wife who resided aboard Camp Kinser, Okinawa, Japan. On August 31, 2015, G.IRVIN was pronounced dead aboard United States Naval Hospital (USNH), Camp Foster, Okinawa, Japan. As these locations are United States military facilities overseas, they are considered to be within the Special Maritime and Territorial Jurisdiction (SMTJ) of the United States, as defined in 18 USC, Section 7(9).

7. This request is appropriate, and not unduly burdensome, as it relates to the potential corroboration of a confessed murder. As will be noted, there may be additional information contained within G.IRVIN's email which corroborates her concerns about domestic violence by LCpl IRVIN, his infidelities, and information relative to bad rapport between G.IRVIN and LCpl IRVIN. See also paragraph 14.

## JURISDICTION

8. This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction,"

2

as defined by Title 18, United States Code, Section 2711.
18 U.S.C. 2703(a),(b)(1)(A) & (c)(1)(A). Specifically, the
Court is "a district court of the United States (including
a magistrate judge of such a court)...that - has jurisdiction
over the offense being investigated." 18 U.S.C.
2711(3)(A)(i).

9. Title 18, United States Code, Section 2703(b)(1)(A)
authorizes any court with jurisdiction over an offense
under investigation to issue search warrants for the
contents of any wire or electronic communication held or
maintained by the provider of a remote computing service
regardless of whether the data is located in the
jurisdiction in which the offense is under investigation.

## PROBABLE CAUSE

10. On August 31, 2015, the United States Naval Criminal
Investigative Service Resident Agency (NCISRA) Okinawa was
notified by the USMC Criminal Investigation Division (CID)
that G.IRVIN, the 19 year old dependent wife of LCpl IRVIN
was discovered unresponsive by LCpl IRVIN. LCpl IRVIN
was interviewed and related he awoke at his residence,
tower 871, apartment 505, aboard Camp Kinser, Okinawa,
Japan, sometime after 0400, August 31, 2015, when he
noticed G.IRVIN was cold to the touch. LCpl IRVIN
stated he attempted to put G.IRVIN in the shower and
pour water on her; however, she remained unresponsive.
LCpl IRVIN telephonically contacted emergency medical
services (EMS) who arrived at the IRVIN's residence
and initiated lifesaving efforts. G.IRVIN was
transported to the United States Naval Hospital (USNH)
Okinawa, Camp Foster, where she was pronounced
deceased at 0615, August 31, 2015. A death scene
examination at the IRVIN's residence was conducted,
and several items, including electronic media, were
seized. No apparent signs of struggle or foul play
were noted at the scene.

11. During a subsequent interview by NCIS, LCpl IRVIN
denied any marital problems and said G.IRVIN did not
have alcohol or substance abuse problems, nor did she
exhibit suicidal ideations. The autopsy of G.IRVIN
concluded with no findings and declared her cause and
manner of death as undetermined. G.IRVIN's toxicological
report documents the presence of alcohol, which

3

corresponded with LCpl IRVIN's account of the limited alcohol consumption by himself and G.IRVIN the night before. Additionally, the toxicology report documents no drugs of abuse or other substances in G.IRVIN's system.

12. On August 31, 2015, the day G. IRVIN was pronounced dead, NCIS seized cellular phones from the shared residence of LCpl IRVIN and G. IRVIN pursuant to a command authorized search and seizure from Colonel Feyedelem, Camp Commander, Camp Kinser, Okinawa, Japan. Among the seized phones was an Apple iPhone 6 which was believed to belong to G. IRVIN. The iPhone 6 was locked and/or disabled with user enabled security Pin/Pass-Code and fingerprint swipe. On September 3, 2015, LCpl Irvin was interviewed by NCIS and informed Special Agent Kelly Parrish that he did not know the PIN number to access the phone; however, subsequent forensic analysis of the data on the iPhone 6 in 2016 later revealed that LCpl IRVIN accessed G. IRVIN's phone after she died but before LCpl IRVIN called 911. Nonetheless, in October 2015, NCIS Cyber Pacific attempted to forensically process data on the iPhone 6, however, due to encryption issues, the data was not successfully extracted.

13. It should be noted that PAYTON was G.IRVIN's maiden name. On June 1, 2016, LCpl IRVIN was interviewed and identified Glynispaytonr@yahoo.com as one of G.IRVIN's e-mail addresses. In June 2016, Jamie Turner, Investigative Computer Specialist, Cyber Operations Pearl Harbor, HI, attempted to access the locked iPhone 6 to forensically extract any data. ICS TURNER reported this was successful, and he provided your Affiant with copies of the extracted electronic media for review. In September 2016, the affiant reviewed the contents of electronic media from all four cellular phones to include the decedent's Apple iPhone 6. Glynispaytonr@yahoo.com was associated with the Facebook, Kik, and Pinterest accounts enclosed on the aforementioned cellular telephone.

14. Review of the call log on the Apple iPhone6 believed to have been utilized by G.IRVIN revealed the last outgoing call was at 10:19:11 (UTC time) on August 30, 2015, which would have been 19:19:11 in Okinawa local time. All times hereafter are referred to in Okinawa local time. Review of the internet history of the aforementioned phone revealed numerous visits to medical websites after G. IRVIN had died. Of note, at 04:56:13 on August 31, 2015— approximately one hour after LCpl IRVIN had discovered his

4

wife unresponsive in bed but 10 minutes before he called 911—a search was recorded for "if somebody's body locks up and they ain't moving what does that mean not breathing." Additional searches on the phone were made for the symptoms of death from 04:56:35-05:02:53 on August 31, 2015. LCpl IRVIN called 911 at 0506, on August 31, 2015.

15. Additional review of the data extracted from the Apple iPhone 6 revealed possible evidence of domestic violence precipitating the alleged murder. At 00:43:23, on August 3, 2015, a visit to www.reddit.com for "my_husband_hit_me_for_the_first_time" was recorded. Multiple messages were observed in August 2015 which reflected suspected infidelity issues and marital discord between G.IRVIN and LCpl IRVIN.

16. From August 2015 to January 2017, interviews of family members, friends, and acquaintances of G.IRVIN and LCpl IRVIN were conducted; however, no information related to a possible cause or contributing factor to G.IRVIN's death was identified. During a September 22, 2016 interview, LCpl IRVIN stated he never hit or choked G.IRVIN and only pushed her against a wall on one occasion.

17. On April 11, 2017, a polygraph examination was administered to LCpl IRVIN at the NCIS Resident Unit, Meridian, MS. During the post-test interview, LCpl IRVIN admitted to a domestic incident between he and G.IRVIN on a time which was determined to be on/about August 30, 2015. LCpl IRVIN stated after he became frustrated with G.IRVIN's actions, he placed his hands over her mouth for so long that he had to switch hands, until G. IRVIN went limp and passed out. LCpl IRVIN further stated he awoke the following morning, and discovered G.IRVIN unresponsive. LCpl IRVIN related he carried her to the shower, and poured water on G.IRVIN in an attempt to get her to respond. LCpl IRVIN stated he called 911 and then the base operator. LCpl IRVIN was subsequently placed into pre-trial confinement.

## BACKGROUND REGARDING COMPUTERS, THE INTERNET, AND E-MAIL

18. The term "computer" as used herein is defined by Title 18, United States Code, Section 1030(e)(1), and includes any electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and

5

includes any data storage facility or communications facility directly related to or operating in conjunction with such device. A server is a computer or computer program that manages access to a centralized resource or service on a network.

19. In my training and experience, I have learned that Yahoo! provides a variety of online services to the general public, including electronic mail ("e-mail") access. Yahoo! allows subscribers to obtain accounts at the domain name Yahoo.com, like the Yahoo! account listed in Attachment A. Subscribers obtain an account by registering with Yahoo!. During the registration process, Yahoo! asks subscribers to provide basic personal information. Therefore, the computers of Yahoo! are likely to contain stored electronic communications (including retrieved and un-retrieved e-mail or Yahoo! subscribers) and information concerning subscribers and their use of Yahoo! e-mail services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

20. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provides clues to their identity, location or illicit activities.

21. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service,

6

records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address (IP address) used to register the account and the IP addresses associated with particular log-ins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

22. In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

23. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files. I know through my training and experience that information could be held remotely via a server, even after it has been deleted from an electronic device.

## SEARCH PROTOCOL

24. In order to ensure that agents search only the computer accounts and/or files described herein and in Attachments A and B, this affidavit and application for search warrant seeks authorization to permit employees of Yahoo! Inc. to assist agents executing this warrant to search only the computer accounts and/or files described in Attachments A and B. The following procedures will be implemented:

>    a. The search warrant will be presented to Yahoo! personnel who will be directed to isolate the accounts and files described in Attachment B;

7

b. In order to minimize any disruption of computer service to innocent third parties, Yahoo! employees trained in the operation of computers will create an exact duplicate of the accounts and files described in Attachment B, including an exact duplicate of all information stored in the computer accounts or files described below;

c. Yahoo! personnel will provide the exact duplicate of the account and files described in Attachment B, and all information stored in those accounts and/or files to the Special Agent who serves this search warrant;

d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from Yahoo! for evidentiary purposes.

## CONCLUSION

25. Based on the foregoing, your Affiant submits that there is probable cause to believe that on the computer systems owned, maintained, and/or operated by Yahoo! Inc., with offices located in Sunnyvale, CA, there may exist evidence of marital issues, the identity of additional witnesses, and evidence of violations of Title 18, United States Code, Section 113 (Assault), and Section 1111 (Murder). On May 2, 2017, a preservation request was submitted to Yahoo! Inc. for Glynispaytonr@yahoo.com.

26. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Brent Schroeder
Special Agent
Naval Criminal Investigative Service

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath and attested to the contents of this Affidavit.

Date/Time: June 6, 2017 8:37 am
City & State: Wilmington, North Carolina

Robert B. Jones Jr., United States Magistrate Judge

8

## ATTACHMENT A

This warrant applies to information associated with Glynispaytonr@yahoo.com, that is stored at premises controlled by Yahoo! Inc. Yahoo! Inc. is a company that is located at 701 First Avenue, Sunnyvale, California 94089, and accepts service of legal process at lawenforcement-request-delivery@yahoo-inc.com.

## ATTACHMENT B

### Particular Things to be seized

I.  Information to be disclosed by Yahoo! Inc. (the "Provider")

To the extent that the information described in Attachment A within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. 2703 (f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.  The contents of any e-mails stored in the account, including copies of e-mails to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.  The types of service utilized;

d.  All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, search history, and files;

e.  All records pertaining to communication between the Provider and any person regarding the account, including contacts with support services and records of action taken.

## II. Information to be seized by the government

All information described in Section I that constitutes fruits, evidence, and instrumentalities of Title 18, United States Code, Section 1111 (Murder) and Section 113 (Assault), those violation(s) involving Glynis IRVIN or Lance Corporal (LCpl) Timothy IRVIN, United States Marine Corps (USMC), and occurring from the time of the creation of the account of Glynispaytonr@yahoo.com to present day, including for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.  Preparatory steps taken in furtherance of assault(s) and the homicide inflicted on G.IRVIN on/about August 30-31, 2015;

b.  Evidence indicating how and when the e-mail account was accessed or used, to determine geographic and chronological context of the account access, use, and events relating to the crime(s) under investigation and to the e-mail account owner;

c.  Evidence indicating the e-mail account owner's state of mind as it relates to the crime(s) under investigation;

d.  The identity of the person(s) who created or used the User ID, including records that help reveal the whereabouts of such person(s).